IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| PATRICIA BAGBEY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 3:13cv298 (HEH) |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Patricia Bagbey ("Plaintiff") is 54 years old, has a tenth grade education and previously worked as a dog handler, a fork-lift driver, an equipment operator/flagger for a construction company and a machine operator for a textile business. On January 25, 2011, Plaintiff applied for Supplemental Security Income ("SSI") under the Social Security Act (the "Act") with an alleged onset date of July 28, 2010, claiming disability due to bipolar disorder, manic depression, degenerative disc disease and arthritis in her back and hand. Plaintiff's application was denied both initially and on reconsideration. Plaintiff's claim was presented to an administrative law judge ("ALJ"), who denied Plaintiff's request for benefits. The Appeals Council subsequently denied Plaintiff's request for review on April 15, 2013.

Plaintiff now challenges the ALJ's denial of benefits, arguing that the ALJ erred in evaluating Plaintiff's credibility and in assessing her past relevant work and comparing it to her Residual Functional Capacity ("RFC"). (Pl.'s Mem. of Point and Authorities in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 14) at 18, 20.)

Plaintiff seeks judicial review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g). This matter is now before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on Plaintiff's Motion for Summary Judgment (ECF No. 12), Plaintiff's Motion for Remand (ECF No. 13) and Defendant's Motion for Summary Judgment (ECF No. 18).[1] For the reasons set forth below, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 12) and Plaintiff's Motion for Remand (ECF No. 13) be DENIED; Defendant's Motion for Summary Judgment (ECF No.18) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. BACKGROUND

Because Plaintiff challenges whether the ALJ erred in evaluating Plaintiff's credibility and in comparing her RFC to her past relevant work, Plaintiff's educational and work history, medical history and hearing testimony are summarized below.

### A. Plaintiff's Education and Work History

Plaintiff has a tenth grade education. (R. at 29.) She previously worked as a dog handler, a fork-lift driver, an equipment operator/flagger for a construction company and a machine operator for a textile business. (R. at 173.) Plaintiff stopped working in January 2011, and she has not worked since. (R. at 30.)

---

[1]     The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

B. Plaintiff's Medical Records

On June 24, 2010, Plaintiff went to Halifax Primary Care with complaints of back pain. (R. at 293.) Plaintiff described pain in her mid-back that radiated down to her right leg. (R. at 293.) Plaintiff also complained of periods of weakness and numbness. (R. at 294.) Shannon Runion, F.N.P., however, noted only minimal objective findings. (R. at 294-95.) Ms. Runion noted tenderness and tightness upon palpitation of Plaintiff's back in addition to pain upon rotation and forward bending. (R. at 295.) Ms. Runion further noted that Plaintiff was neurologically intact, had normal straight leg raise bilaterally and had normal lumbar ranges of motion. (R. at 295.)

On August 23, 2010, Plaintiff began treatment with Dr. Venkat R. Neelagiri, M.D. at Halifax Primary Care. (R. at 286.) During the course of Plaintiff's treatment, Dr. Neelagiri prescribed Flexeril and Oxycodone to Plaintiff for her back pain and sciatica. (R. at 272-97, 320-27, 331-42.) Dr. Neelagiri reported that Plaintiff's x-rays showed disc height loss, disc space narrowing, facet hypertrophy at L5-S1, degenerative changes in Plaintiff's lumbar spine and cervical spondylosis. (R. at 286.) Plaintiff reported a history of severe lower back pain, and Dr. Neelagiri noted that Plaintiff appeared to be in severe pain during the examination. (R. at 286.) Dr. Neelagiri further noted that Plaintiff showed thoracic and lumbar paraspinal tenderness and a positive straight leg raise on her right. (R. at 290.) Dr. Neelagiri reported a normal neurological exam and diagnosed Plaintiff with chronic back pain, chronic and uncontrolled degenerative disc disease, muscle spasms and sciatica. (R. at 291.) Dr. Neelagiri prescribed Plaintiff a regimen of pain medications and suggested that she also apply heat and perform lower back exercises to help with her pain. (R. at 291-92.)

3

On October 21, 2010, Plaintiff returned to Dr. Neelagiri. (R. at 280-85.) Dr. Neelagiri reported findings similar to those of the August 26 appointment. (R. at 282-83.) Dr. Neelagiri otherwise refilled Plaintiff's prescriptions and stated that he intended to refer Plaintiff to a pain specialist. (R. at 284-85.)

On January 13, 2011, Plaintiff returned to Dr. Neelagiri for a follow-up appointment. (R. at 274-79.) Dr. Neelagiri noted normal neurological findings, back stiffness, paresthesia of the lower extremity, no leg weakness, increased lumbar lordosis, no tenderness or tightness, an abnormal range of motion with pain and an abnormal straight leg raise on the right. (R. at 275-77.) Dr. Neelagiri further reported that Plaintiff was able to feed, bathe and dress herself and use the toilet independently. (R. at 275.) Dr. Neelagiri assessed Plaintiff with "Back pain – chronic. Degenerative Disc disease: chronic, not controlled[;] . . . Osteoarthritis, multiple sites[;] . . . Pain, chronic: chronic, not controlled" and muscle spasms. (R. at 277.) Dr. Neelagiri advised Plaintiff to perform stretching exercises and to use cooling therapy to help with her pain. (R. at 278.) He also recommended that Plaintiff "maintain or resume normal activities." (R. at 278.) Dr. Neelagiri refilled Plaintiff's prescriptions and again stated that he intended to refer Plaintiff to a pain specialist once her disability was approved. (R. at 278.) Dr. Neelagiri also increased Plaintiff's Oxycodone dosage at her request, but required Plaintiff to sign a narcotics contract. (R. at 278.)

In March 2011, Plaintiff went to the emergency department at Halifax Regional Hospital after falling twice during the previous week. (R. at 227-28.) Plaintiff complained of back pain with no radiation. (R. at 227-28.) The care providers gave Plaintiff a morphine injection and prescribed medication for breakthrough pain. (R. at 229-30.) An examination indicated that Plaintiff had medial degenerative changes in her knees. (R. at 233.) The care providers further

4

noted that Plaintiff could bear her weight, exhibited normal ambulation and had normal neurological findings. (R. at 227-28.)

On April 7, 2011, Plaintiff returned to Halifax Primary Care for treatment. (R. at 323-36.) An examination revealed that Plaintiff was neurologically intact. (R. at 325.) During this appointment, Plaintiff stated that on March 15, 2011, the emergency department at the hospital diagnosed her with a fractured knee, torn ligaments and pulled muscles. (R. at 323.) The treating family nurse practitioner, however, noted that Plaintiff's hospital "xray was overall unremarkable." (R. at 323.) During this appointment, Plaintiff continued to complain of knee pain and requested a refill of her Percocet medication. (R. at 323.) Ms. Runion, however, noted that Plaintiff had refilled her prescription on March 14, 2011, the day before her visit with the emergency department. (R. at 323.) Moreover, Ms. Runion told Plaintiff that she violated her narcotics contract by receiving a morphine injection from the emergency department. (R. at 325.) Ms. Runion, therefore, informed Plaintiff that the practice would not administer further controlled substances to Plaintiff until she met with Dr. Neelagiri. (R. at 325.) Ms. Runion reported that Plaintiff was very upset and cried when she was told that she could not receive additional narcotics at that time. (R. at 324-25.) Ms. Runion further reported that she did not believe further use of narcotics was beneficial without addressing the "fixable problems in [Plaintiff's] leg." (R. at 325.)

On October 11, 2011, during an appointment with Dr. Neelagiri, Plaintiff reported constant back pain that sometimes radiated into her foot and that Oxycodone had been partially helpful. (R. at 335.) Plaintiff also noted to Dr. Neelagiri that a neurosurgeon at Virginia Commonwealth University had advised against surgery. (R. at 336.) Dr. Neelagiri again recommended that Plaintiff see a pain management specialist; however, Plaintiff indicated that

5

she could not see a specialist in Richmond because of the distance. (R. at 336.) Specifically, Plaintiff stated that travelling to Richmond on short notice for unannounced drug testing and pill counting would be difficult as she relied on others for transportation. (R. at 336.) Dr. Neelagiri reported that Plaintiff was "[d]isabled due to chronic back pain." (R. at 338.) Specifically, Dr. Neelagiri reported that a July 2010 x-ray demonstrated L5-S1 disc height loss/narrowing, facet hypertrophy at L5-S1 and degenerative disc changes in the lumbar spine. (R. at 335.) During an examination, Dr. Neelagiri further noted that Plaintiff had an abnormal gait, abnormally changed positions, abnormally climbed onto the exam table, demonstrated abnormal spine motion with pain and showed normal neurological findings. (R. at 338-39.) Dr. Neelagiri refilled Plaintiff's oxycodone prescription, while stressing the terms of her existing narcotics contract. (R. at 339.) Otherwise, Dr. Neelagiri recommended that Plaintiff resume her normal activities, perform stretching exercises and use cooling therapy to help with her back pain. (R. at 339.)

Between December 29, 2011, and January 15, 2012, Plaintiff went to an emergency department four times. (R. at 347, 361, 376, 404.) On December 29, 2011, Plaintiff complained of sudden right buttock pain, which the attending physician diagnosed as sciatica. (R. at 376-77.) Upon examination, Plaintiff demonstrated normal neurological findings and she could move all of her extremities. (R. at 375.) On January 9, 2012, Plaintiff returned to the emergency department, complaining of sciatic pain and degenerative joint disease. (R. at 361.) The attending physician noted that Plaintiff walked with a cane with some difficulty and complained of numbness, tingling and shooting pain in her left leg. (R. at 360-62.) Plaintiff's examination revealed normal neurological findings, spinal tenderness, spasm, moderately abnormal bilateral straight leg raise and moderate stiffness with a decreased range of motion in the lumbar spine.

6

(R. at 362.)  Plaintiff received a Toradol injection and additional narcotics prescriptions.  (R. at 362-63.)

On January 12, 2012, Plaintiff again returned to the emergency department, complaining of lower back pain and having fallen on her right leg.  (R. at 404, 407.)  Plaintiff could move all of her extremities and walk independently with a slight limp.  (R. at 410.)  An x-ray of Plaintiff's right hip was negative and a lumbar spine x-ray indicated degenerative disc disease at L5-S1, but was otherwise unremarkable.  (R. at 414-15.)  On January 15, 2012, Plaintiff returned to the emergency department with complaints of increased back pain after falling.  (R. at 347.)  The examination revealed normal neurological findings and that Plaintiff could move all of her extremities.  (R. at 346.)  Plaintiff demonstrated trouble walking due to her back pain, which increased upon movement.  (R. at 347.)  Nonetheless, the attending physician noted that Plaintiff showed no lower extremity weakness or significant back deformity and that Plaintiff's condition improved.  (R. at 347-48.)  The attending physician diagnosed Plaintiff with sciatica and back pain of an unknown cause.  (R. at 348.)  Plaintiff received Percocet for her pain.  (R. at 349.)

On February 22, 2012, Dr. Kanhaiyalal Trivedi, M.D. examined Plaintiff and found that, while on medication, her pain rated a four out of ten and, while working or performing physical activity, registered at an eight out of ten.  (R. at 435.)  Dr. Trivedi further noted that Plaintiff attempted and failed physical therapy and TENS unit use, and that she was not a candidate for surgery.  (R. at 435.)  Dr. Trivedi recorded painful flexion and extension movement, mild ataxia, lumbar paraspinal tenderness, normal strength in all extremities, normal deep tendon reflexes, a normal gait and normal heel-toe walking.  (R. at 436.)  Dr. Trivedi diagnosed Plaintiff with lumbar spondylosis, chronic back pain and arthralgia.  (R. at 436.)  He also prescribed hydrocodone as-needed, but only for use during activity or severe pain.  (R. at 436-37.)  Dr.

Trivedi further recommended that Plaintiff engage in a water aerobics program for long-term rehabilitation. (R. at 437.)

In March 2012, a needle EMG showed no evidence of fibial or peroneal neuropathy on Plaintiff's left side, and no acute or chronic neurogenic pattern. (R. at 439.) Two follow-up examinations revealed the same findings. (R. at 429-30, 432-33.) On April 18, 2012, Dr. Trivedi recommended that Plaintiff complete eight weeks of physical therapy. (R. at 431.) On May 17, 2012, Dr. Neelagiri prescribed Plaintiff a walking cane due to her leg, knee and back pain, sciatica, osteoarthritis and cervical spondylosis. (R. at 441.)

C.  New Evidence Before the Appeals Council

While appealing the ALJ's decision to the Appeals Council, Plaintiff offered new evidence from Dr. Lisa York, M.D. of Chase City Primary Care and from Dr. Trivedi. (R. at 4, 442-500.) On January 18, 2012, Plaintiff sought pain medication from Dr. York, who denied the request, because Plaintiff was already receiving pain mediation from Dr. Neelagiri's practice and had previously broken her narcotics contract. (R. at 465.) Dr. York performed an examination that revealed lumbar muscular pain, a negative straight leg raise and full strength in Plaintiff's bilateral lower extremities. (R. at 466.) Dr. York's further examinations indicated that Plaintiff had chest pain, received a breast ultrasound and a stress test, and was recommended to an orthopedic practice for back pain and to an endocrinologist for hyperthyroidism. (R. at 454, 467, 485, 488, 493.)

On June 20, 2012, Plaintiff met with a nurse practitioner with Dr. Trivedi's practice. (R. at 448-49.) Plaintiff complained of pain and tenderness and exhibited mild ataxia. (R. at 448.) An examination revealed normal neurological findings and a normal straight leg raise. (R. at 448.) Plaintiff walked with a cane and a limp, but MRI results revealed neither herniations nor

8

stenosis, but only disc bulges. (R. at 448-49, 498-99.) New medication was added to Plaintiff's regimen, and Plaintiff was again instructed to perform water aerobics for long-term rehabilitation. (R. at 449.)

On August 17, 2012, Plaintiff attended an appointment with Dr. Trivedi. (R. at 450.) During this appointment, she requested a refill for her medications and papers for her disability application. (R. at 450.) Dr. Trivedi's examination findings in August mirrored those from June. (R. at 451-52.) On August 17, 2012, Dr. Trivedi also completed a "Musculoskeletal Questionnaire" for Plaintiff, in which he opined that Plaintiff had back pain, muscle spasm, chronic lower back pain and degenerative disc disease at the L4-5 and L5-S1 levels. (R. at 443-45.) He also opined that Plaintiff was not a malingerer. (R. at 443.) Dr. Trivedi further indicated that, in an eight-hour work day, Plaintiff could sit for about four hours and stand or walk for less than two hours. (R. at 444.) Plaintiff would not need to use a cane or assistive device for occasional walking or standing. (R. at 444.) Dr. Trivedi further indicated that Plaintiff could neither bend nor twist at the waist, experienced drowsiness due to her medications and would be absent from work about three times a month due to her impairments. (R. at 445.)

D. Plaintiff's Relevant Testimony Before the ALJ

On June 11, 2012, Plaintiff testified at a hearing before an ALJ. (R. at 22-44.) Plaintiff testified that she completed tenth grade and that she could both read and write. (R. at 29.) She testified that she suffered from degenerative disc disease and arthritis. (R. at 38-39.) Plaintiff indicated that she took pain medication as prescribed by Dr. Trivedi. (R. at 31-32.) This medication helped with the sciatic pain in her right hip that she experienced daily. (R. at 32.) Plaintiff's doctors rotated her on and off three medications: Percocet, Vicodin and Hydrocodone. (R. at 40-41.) Plaintiff stated that she believed that she could lift or carry five

9

pounds, stand for a short time, sit for about twenty to thirty minutes and walk across her yard to the mailbox. (R. at 32-33.) She had been using a cane to walk for two years and she had a walker, as prescribed by a doctor in the emergency room. (R. at 33-34.)

Plaintiff also testified that, since January 25, 2011, she has gone shopping with other people. (R. at 34-35.) She prepared microwave meals and performed light housework with the assistance of family and friends. (R. at 35.) She did not participate in routine activities outside of the house. (R. at 35.) Further, Plaintiff had not attended physical therapy since January 25, 2011. (R. at 36.)

## II. PROCEDURAL HISTORY

On January 25, 2011, Plaintiff filed an application for SSI due to bipolar disorder, manic depression, degenerative disc disease and arthritis in her back and hand with an alleged onset date of July 28, 2010. (R. at 11, 150-58, 172.) DDS denied Plaintiff's claim initially and again on reconsideration. (R. at 93, 103.) Plaintiff filed a written request for a hearing and appeared before an ALJ on June 11, 2012. (R. at 22-44.) On June 25, 2012, the ALJ issued a written decision denying Plaintiff SSI benefits. (R. at 11-21.) On April 15, 2013, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-4.)

## III. QUESTION PRESENTED

1. Does the additional evidence submitted to the Appeals Council warrant a remand?

2. Does substantial evidence support the ALJ's credibility assessment?

3. Does substantial evidence support the ALJ's RFC determination?

4. Did the ALJ properly evaluate Plaintiff's Past Relevant Work experience?

## IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, less than a preponderance and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted). To determine whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ].'" *Hancock*, 667 F.3d at 472 (quoting *Johnson*, 434 F.3d at 653). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact — if the findings are supported by substantial evidence — are conclusive and must be affirmed regardless of whether the reviewing court disagrees with such findings. *Hancock*, 667 F.3d at 477 (citation omitted). However, if the ALJ's determination is not supported by substantial evidence on the record or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2000). The analysis is conducted for the Commissioner by the ALJ and it is

11

that process that a court must examine on appeal to determine whether the correct legal standards were applied and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[2] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.* If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). To qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is

---

[2]     SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities.   Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities.   20 C.F.R. § 404.1572(c).

required to determine whether the claimant can return to his past relevant work[3] based on an assessment of the claimant's RFC and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock,* 667 F.3d at 472 (citation omitted).

However, if the claimant cannot perform his past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Hancock,* 667 F.3d at 472-73; *Powers v. Apfel,* 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert,* 482 U.S. at 146 n.5). The Commissioner can carry his burden in the final step with the testimony of a VE. When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen,* 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the

---

[3]     Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## V. ANALYSIS

A. The ALJ's Decision

Plaintiff, represented by a non-attorney representative, appeared for a hearing before an ALJ on June 11, 2012. (R. at 6, 22-44.) On June 25, 2012, the ALJ rendered his decision in a written opinion and determined that, based on the application for SSI filed on January 25, 2011, Plaintiff was not disabled under the Act. (R. at 11-21.)

The ALJ followed the five-step sequential evaluation process as established by the Social Security Act in analyzing whether Plaintiff was disabled. (R. at 11-21.) First, the ALJ determined that Plaintiff had not engaged in SGA since her application date of January 25, 2011. (R. at 13.) At step two, the ALJ determined that Plaintiff suffered severe impairments in the form of degenerative disc disease and bipolar disorder. (R. at 13.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. (R. at 14-15.) *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 404.920(d), 416.925, 416.926.

At step four, the ALJ determined that Plaintiff had the RFC to perform light work as defined by 20 C.F.R. § 416.967(b). (R. at 15.) Plaintiff could frequently stoop, crouch, kneel, crawl, finger and handle. (R. at 15.) She could perform simple, routine and repetitive jobs, but not those requiring complex decision-making, constant change or crisis management. (R. at 15-20.)

14

In reaching this conclusion, the ALJ considered objective medical evidence and opinion evidence. (R. at 15-20.) The ALJ followed a two-step analysis of whether the medically determinable physical or mental impairments could reasonably be expected to produce Plaintiff's pain and symptoms and if so, the extent to which the symptoms limited Plaintiff's functioning. (R. at 15-16.) The ALJ concluded that, based on the evidence, Plaintiff's impairment could reasonably be expected to cause the alleged symptoms, but he found that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms lacked full credibility. (R. at 19.) Finally, at step four, the ALJ concluded that Plaintiff had the ability to perform her past relevant work as a flagger. (R. at 21.)

Plaintiff seeks reversal and remand for additional administrative proceedings. (Pl.'s Mem. at 25.) Specifically, Plaintiff challenges the ALJ's assessment of Plaintiff's credibility, RFC and past relevant work. (Pl.'s Mem. at 18, 20.) Plaintiff also asserts that the Appeals Council should not have affirmed the ALJ's decision in light of new evidence, not available to the ALJ. (Pl.'s Mem. at 23.) Defendant asserts that substantial evidence supports the ALJ's decision, and that the new evidence did not warrant a change in the ALJ's decision. (Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") (ECF No. 12) at 15, 20, 23.)

   B.  Plaintiff's additional evidence submitted to the Appeals Council does not warrant remand.

Plaintiff argues that the Appeals Council improperly affirmed the ALJ's decision, because Plaintiff presented new evidence to the Appeals Council. (Pl.'s Mem. at 23.) Defendant argues that the new evidence does not warrant remand, because it is immaterial and would not reasonably change the ALJ's decision. (Def.'s Mem. at 23-25.)

On appeal to the Appeals Council, Plaintiff offered new evidence in the form of an evaluation by Plaintiff's treating physician, Dr. Trivedi, completed on August 17, 2012. (R. at 4, 443.) Dr. Trivedi reported that Plaintiff had suffered from chronic back pain for many years and opined that Plaintiff could continuously sit for one to two hours and stand for about one half an hour. (R. at 443-44.) He further opined that, during an eight-hour work day, Plaintiff could sit for about four hours and stand or walk for less than two hours. (R. at 444.) Dr. Trivedi also reported that Plaintiff could not bend or twist at the waist and that drowsiness was a side effect of her medication. (R. at 444-45.) He also opined that Plaintiff would be absent from work about three times a month. (R. at 445.) Dr. Trivedi's evaluation was not available to the ALJ.

In determining whether the ALJ's decision was supported by substantial evidence, a district court may not consider evidence that was not presented to the ALJ. *Smith v. Chater*, 99 F.3d 635, 638 n.5 (4th Cir. 1996) (citing *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 714-15 (1963)); *Huckabee v. Richardson*, 468 F.2d 1380, 1381 (4th Cir. 1972) (citing *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1970)) (noting that reviewing courts are restricted to the administrative record in determining whether the decision is supported by substantial evidence). Although the Court may not consider evidence that was not presented to the ALJ, the Act provides that the Court may remand a case for reconsideration in two situations. 42 U.S.C. § 405(g). The first is a "sentence four" remand, which provides that the "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the cause for a rehearing." *Id.* The second is a "sentence six" remand, which provides that the court "may at any time order additional evidence to be taken before the Commissioner of Social

Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

A reviewing court may remand a case on the basis of newly discovered evidence if four prerequisites are met: (1) the evidence must be relevant to the determination of disability at the time the application was first filed and not be merely cumulative; (2) the evidence must be material; (3) there must be good cause for failure to submit the evidence before the Commissioner; and (4) the claimant must present to the remanding court a general showing of the nature of the new evidence. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citations omitted). Because Plaintiff has offered new evidence that was unavailable to the ALJ, the Court will address whether Plaintiff has fulfilled the requirements to justify a sentence six remand.

Plaintiff meets the third and fourth requirements of *Borders* standard for a sentence six remand. Good cause exists for Plaintiff's failure to submit the evidence earlier, because the report was completed after the ALJ's decision. Plaintiff has also made a general showing of the nature of the new evidence, as she has discussed it in her motion and included it in the certified transcript of record.

However, Dr. Trivedi's evaluation does not constitute new evidence that is material, warranting a sentence six remand. New evidence must be material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him. *Borders*, 777 F.2d at 955-56 (citation and internal quotation marks omitted). Dr. Trivedi's evaluation was completed in August, 2012, after the ALJ made his determination. However, substantial evidence of record indicates that the ALJ's decision would not have reasonably been different had he had access to the evaluation.

The record available to the ALJ already contained several progress notes and opinions on Plaintiff's conditions from Dr. Trivedi (R. at 429-41), suggesting that the August 17, 2012 evaluation was "merely cumulative" and fails the first requirement of the *Borders* standard. Moreover, the letters fail the second *Borders* requirement of materiality. In June 2012, a nurse practitioner with Dr. Trivedi's practice noted that Plaintiff's MRI was unremarkable and showed no evidence of herniations or stenosis. (R. at 448.) In August 2012, Dr. Trivedi noted that her findings were unchanged. (R. at 451-52.) At that time, Dr. Trivedi only recommended prescription monitoring, that Plaintiff stop smoking and that she utilize water aerobics to help with long term rehabilitation. (R. at 450-52.) These findings and treatment recommendations are consistent with the rest of the evidence of record and undermine Dr. Trivedi's ultimate conclusions in the August 17, 2012 evaluation. Furthermore, to the extent that Dr. York's records address Plaintiff's back pain, they are also consistent with and cumulative to the remainder of the record. The ALJ's decision, therefore, would not have been reasonably different had the new evidence been before him. Because this new evidence is cumulative and immaterial, it fails to meet the requirements of a sentence six remand.

C. Substantial evidence supports the ALJ's credibility assessment.

Plaintiff argues that the ALJ incorrectly discredited Plaintiff's subjective testimony regarding the intensity of her pain. (Pl.'s Mem. at 18-20.) Defendant argues that substantial evidence supports the ALJ's credibility and RFC determination. (Def.'s Mem. at 15-20.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the

18

claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must

follow a two-step analysis. *Craig*, 76 F.3d 585, 594 (4th Cir. 1996); *see also* SSR 96-7p; 20

C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an

underlying medically determinable physical or mental impairment or impairments that

reasonably could produce the individual's pain or other related symptoms. *Craig*, 76 F.3d at

594; SSR 96-7p, at 1-3. The ALJ must consider all of the medical evidence in the record. *Craig*,

76 F.3d at 594-95; SSR 96-7p, at 5, n.3; *see also* SSR 96-8p, at 13 (specifically stating that the

"RFC assessment must be based on all of the relevant evidence in the case record"). If the

underlying impairment reasonably could be expected to produce the individual's pain, then the

second part of the analysis requires the ALJ to evaluate a claimant's statements about the

intensity and persistence of the pain and the extent to which it affects the individual's ability to

work. *Craig*, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available

evidence," including a credibility finding of the claimant's statements regarding the extent of the

symptoms and the ALJ must provide specific reasons for the weight given to the individual's

statements. *Craig*, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

　　　This Court must give great deference to the ALJ's credibility determinations. *Eldeco,*

*Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997). The Fourth Circuit has determined that

"[w]hen factual findings rest upon credibility determinations, they should be accepted by the

reviewing court absent 'exceptional circumstances.'" *Id.* (quoting *NLRB v. Air Prods. &*

*Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's

factual findings and credibility determinations unless "'a credibility determination is

unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason

at all.'" *Id.* (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. *See Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591.

At step three, the ALJ determined that Plaintiff's underlying medical impairments could reasonably be expected to produce her alleged symptoms. (R. at 19.) However, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her condition were not fully credible, to the extent that they were inconsistent with other evidence in the record. (R. at 19-21.) In making his decision, the ALJ noted that Plaintiff's treatment records and objective medical evidence did not support her statements regarding the severity of her limitations. (R. at 19.) Plaintiff argues that the ALJ improperly rejected her credibility. (Pl.'s Mem. at 18-20.) However, as long as substantial evidence in the record supported the conclusion, this Court must give great deference to the ALJ's credibility determinations. *Eldeco*, 132 F.3d at 1011.

Substantial evidence supports the ALJ's determination that Plaintiff's statements were not entirely credible. The ALJ reasonably used evidence of Plaintiff's drug-seeking behavior in making his credibility determination and substantial evidence supports his analysis. (R. at 19.) By receiving narcotic treatment outside of Dr. Neelagiri's practice, Plaintiff breached a narcotics contract. (R. at 324.) As a result, Plaintiff did not have immediate access to controlled substances during an April 2011 appointment with Dr. Neelagiri's practice. (R. at 324.) Plaintiff also showed resistance to seeing a pain management specialist in Richmond, because travelling

20

to Richmond on short notice for unannounced drug testing and pill counting would be difficult. (R. at 336.)

Objective medical evidence supports the ALJ's determination. A January 12, 2012 x-ray showed degenerative disc narrowing at L5-S1; however, there was no evidence of fracture or sublaxation, and Plaintiff's lumbar spine showed normal alignment. (R. at 415.) Furthermore, an EMG from March 24, 2012, was normal and did "not show acute or chronic neurogenic pattern." (R. at 439.)

Moreover, evidence of Plaintiff's medications and course of treatment support the ALJ's determination. 20 C.F.R. § 416.929(c)(3)(iv)-(v). Plaintiff's course of treatment consisted of pain medication, cooling treatments and stretching exercises. (R. at 339.) Neurosurgeons did not advise surgery for her condition. (R. at 336.) Throughout the course of Plaintiff's treatment with Dr. Neelagiri and emergency departments, Plaintiff consistently showed normal neurological findings. (R. at 277, 348, 362, 375.) Likewise, a February 2012 examination by Dr. Trivedi showed that Plaintiff had a normal gait and normal strength in her extremities. (R. at 435-36.) Moreover, Dr. Trivedi advised Plaintiff to use opiates only during activity or episodes of severe pain. (R. at 430.) Otherwise, Dr. Trivedi recommended that Plaintiff should attend physical therapy and continue on her current medication. (R. at 430-31.) Therefore, because substantial evidence supported the ALJ's credibility assessment, the ALJ did not err in making his assessment.

D. **Substantial evidence supports the ALJ's determination that Plaintiff could perform a limited range of light work.**

Plaintiff argues that the ALJ's ultimate RFC conclusion was "irrational when compared to the record," because the ALJ relied upon a flawed credibility assessment and failed to consider

Plaintiff's complaints of drowsiness. (Pl.'s Mem. at 18.) Defendant maintains that substantial evidence supports the ALJ's RFC determination. (Def.'s Mem. at 15-20.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). When making the RFC finding, the ALJ must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. Moreover, the ALJ must consider all of the medical evidence in the record. *Craig*, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; *see also* SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added).

When determining the Plaintiff's RFC, the ALJ considered all of the evidence regarding Plaintiff's symptoms in compliance with the rulings and regulations, including objective medical evidence and Plaintiff's testimony. (R. at 19-21.) As discussed above, because substantial evidence supports the ALJ's credibility determination, the ALJ's ultimate RFC was not improper on the grounds that the ALJ wrongly discounted Plaintiff's testimony.

Plaintiff further argues that the ALJ should have considered the drowsiness brought on by Plaintiff's medications in making his RFC finding. (Pl.'s Mem. at 20.) Drowsiness will generally not be considered disabling unless the record indicates that it results in serious functional limitations. *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (quoting *Burns v. Barnhart*, 312 F.3d 113, 131 (3d Cir. 2002)) ("'Drowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations.'"). Plaintiff made a single complaint of drowsiness during her testimony. (R. at 37.) A review of the record reveals no evidence of drowsiness causing Plaintiff any

22

significant functional limitations.  Moreover, the ALJ essentially addressed Plaintiff's complaint

of drowsiness when he made the overall determination on the credibility of Plaintiff's testimony.

(R. at 19-21.)  Therefore, the ALJ did not err in determining Plaintiff's RFC, and substantial

evidence supports the ALJ's finding.

    E.  The ALJ properly evaluated Plaintiff's Past Relevant Work experience.

    Plaintiff argues that the ALJ failed to properly obtain information regarding Plaintiff's

past relevant work and, therefore, that he improperly concluded that Plaintiff could perform her

past relevant work.  (Pl.'s Mem. at 22.)  Specifically, Plaintiff argues that the ALJ failed to

obtain evidence about her full job and only considered Plaintiff's job as a flagger, rather than as

an equipment operator/flagger, as she described the position.  (Pl.'s Mem. at 21-23.)  Defendant

responds that substantial evidence supports the ALJ's determination.  (Def.'s Mem. at 20.)

    At step four of the sequential analysis, the ALJ must assess the claimant's RFC and past

relevant work to determine if the claimant is able to perform the tasks of her previous

employment.  20 C.F.R. § 404.1520(a)(4)(iv).  In assessing Plaintiff's ability to perform her past

relevant work, the Commissioner may rely on the general job categories of the *Dictionary of

Occupational Titles* ("DOT") as presumptively descriptive of a claimant's prior work.  *See* SSR

82-61 ("The Dictionary of Occupational Titles (DOT) descriptions can be relied upon – for jobs

that are listed in the DOT – to define the job as it is usually performed in the national economy.")

Moreover, agency rulings specifically contemplate "that some individual jobs may require

somewhat more or less exertion than the DOT description."  *Id.*

    20 C.F.R. § 416.960(b)(2) provides that the ALJ may use the services of a Vocational

Expert ("VE") or look to the DOT when determining the demands of Plaintiff's past relevant

work and whether her RFC allows her to perform such work.  20 C.F.R. § 416.960(b)(2) ("We

may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' . . . to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity."). Moreover, the test for evaluating a Plaintiff's past relevant work experience is not whether she may perform the heightened demands of her actual position, but the demands as generally required by employers throughout the economy. SSR 82-61. "[I]f the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" SSR 82-61.

Plaintiff listed one of her past relevant work experiences as "equipment operator/flagger." (R. at 173.) A review of the ALJ's decision indicates that he did in fact obtain information regarding Plaintiff's past relevant work as required by the regulations. In reaching his decision, the ALJ permissibly relied upon both VE testimony and the DOT description of a "flagger" to determine whether Plaintiff's RFC allowed her to perform her past relevant work. During a prior hearing on Plaintiff's earlier application for benefits, a VE testified that Plaintiff's prior work was that of a flagger. (R. at 21, 55.) The VE specifically indicated that this prior job was defined in the DOT at #372.667-022. (R. at 21, 55.) During the earlier hearing, the VE further testified that the job of flagger was generally unskilled and could be performed at a light exertional level. (R. at 55.) The DOT similarly classifies the job of flagger as involving light work. Dictionary of Occupational Titles, http://www.occupationalinfo.org/37/372667022.html (last visited Jan. 6, 2014). Rather than failing to obtain information on Plaintiff's past relevant work, as Plaintiff claims, the ALJ referenced prior VE testimony and properly relied upon the

DOT to gauge the exertional requirements of Plaintiff's past relevant work and compare them to her RFC. (R. at 21, 55.)

Plaintiff's argument that the ALJ failed to properly evaluate the job as Plaintiff described fails, because the ALJ determined that Plaintiff could perform her past relevant work as a flagger, as generally described throughout the economy. (R. at 21.) The fact that, in her specific job, Plaintiff may have performed duties as an equipment operator in excess of her duties as a flagger does not alter the ALJ's analysis. SSR 82-61. Therefore, the ALJ properly followed SSA regulations and rulings in reaching his ultimate determination, and substantial evidence supports the ALJ's conclusion that Plaintiff's RFC allowed her to perform her past relevant work as a flagger.

## VI. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's Motion for Summary Judgment (ECF No. 12) and Plaintiff's Motion for Remand (ECF No. 13) be DENIED; that Defendant's Motion for Summary Judgment (ECF No. 18) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk file this Report and Recommendation electronically and forward a copy to the Honorable Henry E. Hudson with notification to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure**

25

shall bar you from attacking on appeal the findings and conclusions accepted and adopted

by the District Judge except upon grounds of plain error.

/s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: January 8, 2014